## No. 12,379.

### CALDWELL ET AL. *v.* STATES.
(6 P. [2d] 1)

Decided November 2, 1931.  Rehearing denied November 23, 1931.

Messrs. FAIRLAMB & FAIRLAMB, for plaintiffs in error.

Mr. C. H. Stewart, Messrs. Moynihan, Hughes & Knous, for defendant in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

James P. Caldwell, H. L. Palmer, the Dingman Land and Fruit Company, E. E. Smiley and Frank Benzing, called herein the plaintiffs, sued Gilbert W. States. They sought an injunction restraining the defendant from using water from the Roseberry ditch, and from interfering in any manner therewith. In his answer the defendant, after denying some of the plaintiff's allegations, pleaded laches and estoppel, and also pleaded a counterclaim, claiming an undivided one-third interest in the ditch and in the water rights belonging thereto, and praying that said interests be quieted in him, and that the plaintiffs be restrained from interfering with the defendant's rights. In their replication the plaintiffs denied the allegations concerning laches and estoppel, and pleaded an estoppel by virtue of a water adjudication proceeding.

The trial court found all the issues in favor of the defendant; and also found specially that about the year 1894 E. H. Finch and Fred W. Butt, the defendant's predecessors in interest, made an oral agreement with William Donnelly, the plaintiff's predecessor in interest, to clean out and increase the carrying capacity of the Donnelly ditch, in consideration whereof Finch and Butt should have the right to use the water belonging to the Donnelly ditch; that subsequently the name of the Donnelly ditch was changed to that of the Roseberry ditch; that since 1894 the defendant and his predecessors in interest have used at all times when necessary at least one-third of the waters of that ditch; and that the defendant has a one-third interest in the ditch and its water appropriation. And in its opinion the court stated that Finch and Butt performed their part of the agreement. The

decree accordingly quieted title thereto in the defendant; and it provided that he and his successors shall return all waste water into the ditch for the benefit of the plaintiffs, and shall bear one-third of the necessary "upkeep and expense and maintenance" of the ditch from the headgate to where the ditch leaves the defendant's premises.

The plaintiffs contend that the findings and decree are not supported by the evidence. With that contention we are unable to agree.

1. On October 21, 1886, William Donnelly filed for record his certificate of location of the Roseberry ditch and claim of appropriation of water from Kiser creek. It stated that Donnelly had the sole interest in the ditch and that work was commenced on August 20, 1886. For years thereafter the ditch was known as the Donnelly ditch.

Finch testified that in 1894 he took up the land now owned by the defendant and irrigated it from Kiser creek; that he had an oral agreement with Donnelly whereby "we were to use the Donnelly ditch water, and were to give him our waste water into the same channel;" that the ditch at that time was only about 15 inches wide and was very shallow and full of grass and stones; that "we" made it wider to carry the extra water, the cost being borne by Finch and Butt; that "we" were given permission to change the course of the ditch; that a divider was put in the ditch, dividing the water into two-thirds and one-third, the one-third being taken across the dike and used to irrigate the Finch orchard; that for two or three years that was all the water he had; that while new boxes have been put in from time to time and the dirt dike was changed to a pipe line and then to a concrete siphon, the use of the water has remained the same from 1894 until the present time, there being one-third taken through the pipe line and later the siphon and used for the irrigation of the orchard and for domestic purposes; and that he does not know of any claims by other per-

532

sons, and was not disturbed by any persons making claim to the waters other than that people on the ranches above him sometimes stole the water.

The defendant testified that he saw Finch and Butt working on the ditch in 1895. He also testified that Donnelly told him that he gave Finch and Butt permission to construct the ditch from their place "up to the head of Kiser" and to use the water, that he (Donnelly) did not have to maintain the ditch when "those fellows" had a right to take the water down, and that he got water anyway. The evidence indicates that the statement was made while Donnelly still owned the ditch, or the interest therein that remained after he made the agreement with Finch and Butt.

There was other testimony in behalf of the defendant tending to show that Finch and Butt, at their own expense, cleaned out the ditch and widened it, and put in an appliance that divided the water so that one-third went to irrigate their land, now owned by the defendant, and two-thirds went down the ditch for the use of Donnelly; that such division of water continued until the granting of a temporary injunction in the present suit; that such use of the water by Finch and Butt and their successors in interest continued without objection on the part of Donnelly or his successors in interest, and without interruption.

There was evidence introduced by the plaintiffs that contradicted some, but not all, of the evidence introduced by the defendant. There was a conflict in the testimony concerning the uninterrupted use of the Roseberry ditch water after 1906, and concerning acquiescence after that date by the plaintiffs and their predecessors in interest. However, the trial court resolved the conflict in favor of the defendant, and its findings will not be disturbed.

2. The testimony of Finch and the defendant relating to the oral agreement by Donnelly with Finch and Butt concerning the right of the latter to use Donnelly (Rose-

berry) ditch water was uncontradicted. Counsel for the plaintiffs, however, say that in his testimony relating thereto, Finch stated not facts but his conclusions. We do not so consider his testimony.

■ 3. It is contended, also, that the agreement was too vague and indefinite to constitute an enforceable agreement; that it does not specify the amount of water, the time of its use, etc. It is quite probable that if, before anything had been done under the agreement, Finch and Butt had sued for specific performance thereof, they would not have been entitled to a decree. But such is not the present case. In *North Boulder Farmers' Ditch Co. v. Leggett Ditch & R. Co.*, 63 Colo. 522, 537, 168 Pac. 742, we said: "We are in accord with plaintiffs in error's citations * * * to the effect that where the language in a contract is vague or ambiguous, the conduct of the parties and the construction which they have put upon it while engaged in its performance, before controversy has arisen, is one of the most reliable tests of their intention." And in *Farrell v. Garfield Mining, M. & S. Co.*, 49 Colo. 159, 165, 111 Pac. 839, we said: "As a general rule, it is the duty of the court, where the language of a contract is indefinite or ambiguous, to adopt the construction and particular interpretation which the parties themselves have put upon it and to enforce that construction."

In the present case the conduct of the parties to the agreement while engaged in its performance and before any controversy arose was an indication of their intent in making the agreement; was, in fact, the construction put upon the agreement by them. It made definite and clear what in the oral agreement was indefinite and uncertain. Indeed, what was said, taken in connection with what was done, constituted the agreement between the parties. During all the years that Donnelly retained an interest in the ditch and water rights, the rights of the defendant's predecessors in interest were never questioned. The practical construction by the parties to the

agreement is the construction contended for by the defendant. For thirty years prior to the commencement of the suit the use of the water was in accordance with that construction. In *Love v. Cotten*, 65 Colo. 593, 179 Pac. 806, a writing purporting to transfer an interest in a ditch did not state what ditch was referred to. We held that as the purchaser had long been in possession, the informality in the writing could not be urged against his right.

The finding of the trial court that the agreement was as contended for by the defendant is not only supported by the evidence, but is supported by a preponderance thereof. We cannot disturb that finding.

█ 4. In order to obtain additional water for irrigation, Finch and Butt, on November 8, 1896, began the construction of the Japan ditch. On September 28, 1907, in a proceeding for the adjudication of water priorities in that district, the court awarded to the Roseberry ditch priority No. 22, as of June 1, 1886, for 3.25 cubic feet of water per second; and to the Japan ditch priority No. 42, as of November 8, 1896, for 2.87 cubic feet of water per second. Counsel for the plaintiffs say that if Finch and Butt claimed any rights in the Roseberry ditch, they could have submitted a claim based upon their acreage irrigated through that ditch, and that as they did not do so, the decree was an adjudication that they had no such rights. That contention cannot be sustained. While the adjudication settled the priority of rights as between the two ditches, it did not, and could not, adjudge the respective rights and claims of water users under either ditch. *Robinson v. Alfalfa Ditch Co.*, 89 Colo. 567, 5 P. (2d) 1115, just decided; *Oppenlander v. Left Hand Ditch Co.*, 18 Colo. 142, 31 Pac. 854; *Park v. Park*, 45 Colo. 347, 101 Pac. 403; *Love v. Cotten*, 65 Colo. 593, 179 Pac. 806; *Burke v. South Boulder Canon Ditch Co.*, 76 Colo. 354, 231 Pac. 674.

█ 5. Another objection urged by counsel for the

plaintiffs is that, assuming that Finch and Butt acquired an undivided one-third interest in the Roseberry ditch and its priority, such interest never passed to the defendant. We cannot sustain that objection. While it was stipulated that none of the deeds in the defendant's chain of title specifically named the Roseberry ditch, or any water right therein, it also was stipulated that after a description of the land conveyed, each and all of the deeds contained these words: "together with all water rights, including all of first party's interest in and to the Japan ditch and its water rights and priorities, and two hundred shares of the capital stock of the Rockland Reservoir Company, and in and to all other water rights belonging to said land, together with all ditches and ditch rights of way, and all rights to and interest in ditch and ditch rights of way, and all water and water rights which have been and are used for the irrigation of the above described land and for the irrigation of any part thereof." The deeds carried the rights claimed by the defendant.

6. An inspection of the land would shed valuable light upon some of the testimony. The trial judge, at the instance of and in company with the attorneys, inspected the premises and the ditches, and stated: "By the inspection the court was enabled to observe the plan or method of irrigating said ranch and the portion of the Roseberry and Japan ditches thereon. This inspection is a great aid to the court in weighing and evaluating the testimony."

The case was tried carefully and with skill on the part of both court and counsel. The decree is supported by a preponderance of the evidence, and is a correct and just disposition of the controversy.

The judgment is affirmed.