No. 13,045.

KOUNTZ ET AL. *v.* OLSON ET AL.

No. 13,046.

PERRINO *v.* OLSON ET AL.
(29 P. [2d] 627)

Decided January 22, 1934.

Mr. George H. Blickhahn, Mr. Romilly Foote, for plaintiffs in error.

Mr. Harvey Starbuck, Mr. John L. East, for defendants in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

The parties appear herein in the same order as in the court below.

Case No. 13045 was consolidated with case No. 13046. The two actions were tried together and are so considered here. They involve ditch and water rights under an early decree on the Huerfano river in Huerfano county, Colorado.

Plaintiffs in case No. 13045 are the owners of 120 acres of land particularly described in their complaint, and plaintiff in case No. 13046 is the owner of 200 acres, all of which land was formerly operated as a unit by one Thomas Lamb. This land lies to the east of the land owned by defendants herein. All of the land, of both plaintiffs and defendants, is or can be served by Martin Ditch No. 4 from the Huerfano river, which runs from west to east, with headgate on the land of one of the defendants.

The district court of Huerfano county in 1889 adjudicated the priorities of right to the use of water in this ditch by what is referred to herein as the Read decree. This decree awarded 1.40 cubic feet per second of time by priority No. 4, sufficient to irrigate 70 acres of land, as of date July 16, 1862, and 1.60 cubic feet per second of time by priority No. 11, sufficient to irrigate 80 acres of land, as of date April 1, 1866, making a total of 3 cubic feet of water per second of time sufficient to irrigate 150 acres. The claimants named in this decree were Allan McLean, E. G. Miller, Ramon Trujillo, David Manchego, Juan Baca, Encarnacion Martinez, Carpio Archuletta, Francisco Josephy, Juan Garcia and Delores Luna. The plaintiffs claim through Francisco Josephy, Carpio Archuletta and Delores Luna.

After the ownership by Thomas Lamb of what is now plaintiffs' land, the various tracts have been owned by different persons, down to the present plaintiffs, and the water applied severally to the different tracts, but since the ownership by the plaintiffs, the water has been applied as a unit on all of the tracts.

Plaintiffs, by their complaint, make claim under three causes of action: (1) General ownership; (2) ownership by possession and adverse use for more than 30 years; (3) an adverse use under claim and color of title under the seven-year statute of limitations.

Plaintiffs contend that each of the 10 original appropriators of water was understood for many years to be an owner of an equal one-tenth interest in the ditch and priorities of right to the use of water by an agreement between themselves, and that they were actually appropriators and users, and that by contract, if not originally, they became the owners of an equal interest.

Plaintiffs further contend that they and their predecessors have claimed the right to use and have used said water in a continuous, open, notorious and adverse manner for more than 30 years, and have so used said water on the lands now owned by plaintiffs and that for more

than 10 years, plaintiffs and their predecessors have paid taxes on some of this land as irrigated land which was irrigated by means of water decreed under the aforesaid priorities, and because of the use thereof.

Plaintiffs also allege that by decree of the district court of Huerfano county entered March 14, 1914, in the matter of Pedro A. Gomez v. Wm. Miller and Abel Cordora, it was determined that Pedro Gomez was the owner of an undivided one-half interest in said ditch and water rights and of its priorities to the use of water, and that plaintiffs are successors in interest to Pedro A. Gomez, and that Wm. Miller is the same Wm. Miller who is now one of the defendants herein; that Miguel A. Pino, another defendant herein, is successor in interest to Abel Cordora.

Defendants filed their answer generally denying plaintiffs' alleged interest in and to the ditch, right of way, water and water rights, and alleged that each of the defendants claims a right, title, and interest therein prior, superior and paramount to the alleged interest of plaintiffs and for further answer, generally alleged that plaintiffs have no right, title or interest in and to Martin Ditch No. 4, and alleged that any interference claimed by plaintiffs to have been made by defendant Fowler with the use of water from the Martin Ditch, has not been an interference with any of plaintiffs' rights because plaintiffs had no rights; alleged that Martin Ditch No. 2 is an enlargement of, and an extension beyond the terminus of, Martin Ditch No. 4, and is designed, among other things, to convey water to the lands claimed by plaintiffs; that by the adjudication of water rights by a decree of the district court dated February 23, 1898, known as the Killian decree, Martin Ditch No. 2 was awarded an appropriation as priority No. 143, as of date July 16, 1889, of one cubic foot of water per second of time for 50 acres of land; that the defendants, other than J. T. Thorne, are the absolute owners of Martin Ditch No. 4, and the priorities therefor, numbered 4 and

11, and pray by their answer that the plaintiffs be forever enjoined and barred from asserting any claim in or to Martin Ditch No. 4 or priorities numbered 4 and 11.

The terms of the Read decree indicate that the three predecessors in interest of plaintiffs herein, being three of the ten claimants named in the decree, actually appropriated three-tenths of the water awarded by the decree. This was so understood among them and so considered, and by actual oral contract the ten claimants fixed the amount that the ten original appropriators and claimants were each entitled to have as an equal share or one-tenth interest each. This is shown by the undisputed testimony of Bucci and Lamb. For a period of more than 30 years, at least from the time of the ownership of these lands by Thomas Lamb, the owners of the lands demanded and used the water, and at all times, as is clearly shown by the evidence, they did their proportionate share of the maintenance of the ditch, and this maintenance was apportioned according to their ownership in the ditch and water rights. It appears from the undisputed evidence, that for the last ten years, plaintiffs and their predecessors under color of title have paid taxes on the lands here in question as irrigated lands.

According to the well settled rule, the Read decree determined only the amount of water to which the Martin Ditch was entitled; however in that decree certain parties, among whom were the predecessors in interest of the plaintiffs, were named as claimants. This, in connection with other facts, is persuasive that the parties so named in the proceeding, which ripened into a decree, had an interest in, and title to, the water involved. It was the appropriation of these claimants as consumers, that fixed the amount of water allotted to the ditch, and the relative rights determined. In the case before us, the claimants or consumers named, made the diversion themselves, thereby completing the appropria-

tion after a showing that the water was applied in a reasonable time to a beneficial use.

■ As shown before, Luna, Archuletta and Josephy, predecessors in interest of the plaintiffs herein, were named as claimants in the Read decree. The testimony, as well as the exhibits, being deeds and abstracts, shows that they claimed a one-tenth interest each, in and to the water appropriated under the Read decree, and exercised the right to, and did, convey same. Whether or not their title to the land was one in fee simple, it is not necessary for us to determine. It is sufficient, in order to perfect an appropriation to the right to use of water, if they had only an uncompleted or unfinished title. This right they could have acquired separate and apart from the land.

■ The evidence in this case is replete with statements of witnesses who were the owners of the lands in question from time to time, to the effect, that following the date of the Read decree, the owners of the lands and users of the water, including those named in the decree and their grantees, agreed among themselves that each was an owner of a one-tenth interest in this ditch and water rights allotted thereto. They acted together and became tenants in common, and the law of tenancy controlled their joint rights as per their own contract. Oral agreements. concerning priorities and title to water rights, followed with its change of possession and beneficial application have been held valid by this court. *Schilling v. Rominger,* 4 Colo. 100; *McLure v. Koen,* 25 Colo. 284, 53 Pac. 1058; *Park v. Park,* 45 Colo. 347, 101 Pac. 403.

■ According to the allegations of plaintiffs' complaint, which are supported by the evidence, at all times, during more than 30 years, whenever their claimed right to the use of one-tenth interest each in said water rights was interfered with in any way, they, if necessary, employed hostile methods to assert their use and rights. This shows an uninterrupted, exclusive and open pos-

session, and establishes title to same. This rule is laid down in *Allen v. Swadley*, 46 Colo. 544, 105 Pac. 1097.

■ Continuous use of a water right invests possession; if this possession of such water right, considered as land, is adverse and continuous for the period contemplated by the seven-year statute of limitations, and those in possession have paid all taxes legally assessed, the title becomes fixed; and as real property it may be passed by deed. The testimony that plaintiffs and their grantors have so paid their taxes on the land is undisputed. These taxes have been so paid on land assessed and recognized as irrigated land. This is persuasive evidence of the use, by those in possession, of the water rights. Such rights are clearly established and are within the following statute, being chapter 150, section 37, Session Laws of 1927: "Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall, for seven successive years, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid shall be entitled to the benefit of this section."

Defendants in their brief refer to all the claimants under the Read decree, other than the three predecessors in interest of the plaintiffs herein, as *grantees* under that decree. From the record in this case, if defendants' position with reference to those claimants is correct, and their interests were fixed as grantees by that decree, and those interests are now owned by the defendants, the same decree fixed the rights and interest of the predecessors of the plaintiff herein as grantees under the decree. De-

fendants have contended that Martin Ditch No. 2 with its appropriation under the Killian decree was designed to serve the lands of the plaintiffs herein, but according to the testimony of the water commissioner of water district No. 16, in which this property is located, no water could be supplied under the Killian decree for this ditch before there was approximately 300 cubic feet of water per second of time in the Huerfano river and that there was no record that there ever has been any water thereby distributed under the Killian decree.

It is to be noted, and is significant, that the appropriation under the Killian decree for one cubic foot of water per second of time to Martin Ditch No. 2, is a junior priority, it is No. 143, as of date July 16, 1889, while the predecessors in interest of plaintiffs herein were named as claimants under the Read decree, which awarded priority No. 4, as of 1862, and priority No. 11, as of 1866. Under these facts the Killian decree is entitled to no consideration in determining the successive interests down to plaintiffs and defendants under the Read decree.

The trial court by its findings, clearly established an interest, through an original appropriation by the predecessors in interest of the plaintiffs herein, when it made an award of one-tenth of one cubic foot of water, and two-tenths of one cubic foot of water, respectively, to plaintiffs. We are unable to determine the basis of this finding by the court from the evidence or from the decree, and are of the opinion that the trial court misconceived the force and effect of the evidence and naturally, therefore, reached the wrong conclusion. When such is manifest, this court feels at liberty to reverse the finding made, and we do this with less reluctance since there is but little conflict in the testimony going to the principal questions here involved.

The great weight of the testimony shows an original appropriation by the predecessors in interest of plaintiffs to be three-tenths of all the water adjudicated to

said ditch; it conclusively shows an adverse use by plaintiffs and their predecessors of the amount of water claimed by them for a period of more than 30 years; and brings their claim within the seven-year statute of limitations. These matters being definitely fixed and determined, it is unnecessary to go into the questions which involve the changing of, or the interference with, those rights subsequent to the original decree of appropriation.

The judgment should be, and is, reversed and remanded for further proceedings in harmony with the views herein expressed, with directions to determine plaintiffs' claims for damages on account of the alleged interference by defendant Fowler with their rights established hereunder.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BUTLER concur.