## No. 17,569.

S. L. LOSHBAUGH, ET AL. *v*. ALEX BENZEL.

(291 P. [2d] 1064)

Decided January 3, 1956.

Mr. FRANK DELANEY, for plaintiffs in error.

Mr. Neil S. Mincer, for defendant in error.

*En Banc.*

Mr. Chief Justice Alter delivered the opinion of the Court.

Alex Benzel brought an action against numerous defendants, among whom were S. L. Loshbaugh and Ida M. Loshbaugh, to have title quieted to certain real property and to an undivided one half interest' in certain water rights in which he and defendants Loshbaugh were the only interested parties. All of the other named defendants defaulted, and a decree was entered in plaintiff's favor quieting title to all of the lands described in the complaint. After the default of all other defendants had been entered, the only question remaining for determination was the respective rights of plaintiff and defendants Loshbaugh in the water decreed to the L and C Ditch. Trial was to the court and findings and a decree entered, in which, inter alia, plaintiff was awarded an undivided one third interest in the L and C Ditch which was decreed to be No. 68 with Priority No. 112 in Water District No. 45 and entitled to 14.2 cubic feet of water per second of time; defendants were awarded an undivided two thirds interest in said ditch. Loshbaughs, being dissatisfied with the decree, are here by writ of error seeking a reversal.

The parties will be referred to as plaintiff and defendants as those positions were taken by them in the trial court.

Benzel is now the owner of the property and irrigation rights referred to herein as Lux, and the Loshbaughs are now the owners of the property and irrigation rights referred to as Crann.

Plaintiff in his complaint alleges that he is the owner of an "undivided ½ interest in and to the L. C. Ditch and its water rights and Priority No. 112 in Water Dis-

trict No. 45 as appears in the decrees of the District Court in and for the County of Garfield and State of Colorado" while defendants by answer and counter claim assert that they are the owners of an undivided 55/71 of all the water decreed to said L and C Ditch. In plaintiff's amended reply to the counter claim, defendants' ownership of 55/71 of all of the water in the L and C Ditch is denied; for a second defense plaintiff alleges "That for a period of more than 18 years prior to the commencement of this action plaintiff has been in possession of an undivided one-half interest in and to the L. and C. Ditch and the water rights adjudicated thereto; that said claim and the possession of said interest in said ditch and the water rights has been open, notorious, continuous and hostile to the claim and rights of the defendants, their predecessors in interest, and every other person."

The record discloses that on April 8, 1893, the district court in and for Garfield County entered its findings and decree in the matter of the petition of Peter Lux, et al, for an adjudication of the L and C Ditch * * * in Water District No. 45. In the court's findings and decree the following:

"That it [L and C Ditch] is owned by Peter Lux and Wm. Crann jointly and that their priority rights are equal; That is is used for the irrigation of lands and takes its supply of water from Beaver Creek; * * * That said Ditch is entitled upon said appropriation to No 68 with Priority No 112 in said Water District No 45; That there are about 2000 acres of land lying under and subject to irrigation from said Ditch; * * *

"Therefore It is ordered, adjudged and decreed by the Court in reference to said L & C Ditch as follows:

"No. 68
"L and C Ditch

"That said Ditch is entitled to No. 68 with Priority No. 112. It is owned by Peter Lux and Wm. Crann ½ interest each and their Priority Rights are equal; * * *

and it is hereby adjudged and decreed that there be allowed to flow into said Ditch from said Creek for the use of aforesaid and for the benefit of the parties lawfully entitled thereto under and by virtue of the appropriation by original construction—Priority No 112—40 cubic ft. of water per second of time."

On July 12, 1920, Frank Estes and others filed their amended complaint in the district court of Garfield County, naming Crann and others as the owners of the L and C Ditch and other described water rights, and alleging that the decree of the district court of April 8, 1893, was null and void and of no force and effect so far as the L and C Ditch was concerned except to the extent of 5 cubic feet of water per second of time.

Defendants filed their answer in which they alleged, inter alia:

"* * * that while defendants are the owners of the reservoirs described in the decree to the L. and C. Ditch, and of the storage rights adjudicated thereto, they have not, for a long period of time, made any use of said reservoirs, on account of the fact that so large an amount of sediment is carried into the waters of said streams as to make the use of said reservoirs impracticable.

"That the defendants are now, were at the commencement of this suit, and for a great many years prior thereto have been irrigating in the aggregate about *710* acres of land lying under the L. and C. Ditch, with water from Beaver Creek, for agricultural, pasture and meadow purposes, and during all of said time have made beneficial use of the water of Beaver Creek in the production of valuable agricultural crops and for meadow and pasture purposes on the acreage of land aforesaid." (Italics ours.)

In connection with the Estes-Crann suit, supra, and prior to the hearing therein, the court ordered a survey of the lands irrigated under the L and C Ditch, and according to the undisputed evidence in the record before us, said survey resulted in a finding that there had been

irrigated from the waters decreed to the L and C Ditch 550 acres of the Crann lands and 160 acres of the Lux lands, and, as a result of the survey and the admissions of defendants in the answers above referred to, a judgment and decree was entered on February 20, 1922, the pertinent part of which is as follows:

"* * * the defendants since the entry of said decree [April 8, 1893] have beneficially used from Beaver Creek through the L. & C. Ditch of the waters so decreed sufficient to irrigate *710 acres of land only,* which at the ratio of 1 cubic foot to 50 acres of land, amounted to 14.2 cubic feet per second of time, leaving a balance of 25.8 cubic feet of water per second of time so decreed, no part of which they should now be entitled to use through the L. & C. Ditch from Beaver Creek under the said limitations of said decree so as to prevent any duplication of water as aforesaid. * * *

* * *

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, That the 25.8 cubic feet of water per second of time allowed to lapse by the defendants on account of the limitation in said decree be deducted from the amount of 40 cubic feet of water per second of time allowed by said decree, and that there should be allowed to flow through said L. & C. Ditch, from said Beaver Creek, 14.2 cubic feet of water per second of time, when needed for beneficial irrigation, for the use and benefit of these defendants, or the parties lawfully entitled thereto, as of its priority date, and in connection with the waters decreed and used through the Enterprise Ditch, to prevent duplication as in said decree provided." (Italics ours.)

So far as we are advised, the decree in *Estes v. Crann,* was never placed of record in the office of the County Clerk and Recorder of Garfield County, Colorado.

The judgment and decree of the trial court in the Estes-Crann action, supra, was affirmed by the Supreme Court. *Estes v. Crann,* 73 Colo. 438, 216 Pac. 517.

It is reasonable to assume from the record that plaintiff's claim to one half of the irrigation water in the L and C Ditch is based on the following found in the recorded decree of April 8, 1893:

"That said ditch is entitled to No. 68 with Priority No. 112. It is owned by Peter Lux and Wm. Crann ½ interest each and their Priority Rights are equal; * * *"

■ If so, he is in error for "While the adjudication settled the priority of rights as between the two ditches, it did not, and could not, adjudge the respective rights and claims of water users under either ditch (citing cases)" *Caldwell v. States,* 89 Colo. 529, 6 P. (2d) 1; *Woods v. Sargent,* 43 Colo. 268, 95 Pac. 932; *Robinson v. Alfalfa Ditch Company,* 89 Colo. 567, 5 P. (2d) 1115.

We call attention to the fact that in the April 8, 1893, decree the court found, "That there were about 2000 acres of land lying under and subject to irrigation from said Ditch," and decreed to said ditch 40 cubic feet of water per second of time for the irrigation thereof. In the decree entered February 20, 1922, in the Estes-Crann action, the court found that 710 acres were irrigated through the L and C Ditch, and accordingly awarded 14.2 cubic feet of water per second of time for the irrigation of said acreage. In both decrees the court allocated 1 cubic foot per second of time to each 50 acres of land irrigated. The undisputed testimony is that at the time of the hearing and decree in the Estes-Crann action only 160 acres were irrigated on the Lux property and 550 acres on the Crann property. Using the mathematical computation applied by the court in both the 1893 and 1922 decrees, the Lux property would be entitled to 3.2 cubic feet per second of time, and the Crann property to 11 cubic feet per second of time from the L and C Ditch.

Thomas E. Dever purchased the Lux property in 1939 and sold the same to Benzel in 1943. He testified that when he first knew the property in 1912 it was irrigated

and was then a good ranch, but when he bought it in 1939 it wasn't being irrigated and no one was living on the property. He saw the property in 1937, and when asked whether it was then being irrigated, he replied, "It looked to be a pretty good crop on it that year." He further testified that *he understood* from Gillum that he was the owner of one half of the water in the L and C Ditch, and *he understood* he was getting a half of it in 1939, but when he tried to get a half he was told that he was to receive but one third of the water. He attempted to plant two crops; the first one failed because the headgate washed out and no water could be gotten in the Lux Ditch, and the second time the headgate washed out again and no water could be forced into the Lux Ditch so he lost heart in trying to raise any crop during his ownership. During his ownership of the property the divider was set at about one third and two thirds, and during his ownership of the property he irrigated only about 15 acres. He was told about the Estes-Crann suit. He stated that when he first purchased the Lux place he understood that he was entitled to half the water in the L and C Ditch, but when told by Mrs. Loshbaugh that he was mistaken, he "allowed the divider to be placed where the other party [Loshbaughs] wanted it." His second attempt to raise a crop on the Lux property was in 1940 or 1941, but was unable to get irrigation water in his ditch, after that he gave up all hopes and did not try to irrigate any more although he did try to fill some small reservoirs on his place. The headgate having washed out about this time, he said, "I didn't build it, no, because I wasn't interested in trying to raise a crop on the land any more. All I wanted was water for my ponds and reservoirs that I had built."

Benzel testified that he purchased the Lux property in January, 1943, and had been acquainted with it since about 1921. He knew nothing about it being irrigated in 1921 and first used the L and C Ditch after his purchase in 1943, when he had about a third of the water

therein. It was divided about one third and two thirds for three or four years. After purchasing the property he talked with defendants about the division of the water in the ditch and was told that he was to receive one third thereof, and he consented to this arrangement. He claimed and took half the water when he could get it after 1950 or 1951, and his claim to half the water was based on the April 8, 1893, decree as disclosed in his abstract. The division box was washed out in 1943, and it was repaired and worked satisfactorily for several years. His side of the box would fill with debris. He testified that he knew nothing about the Estes-Crann decree in 1922, and at one time took water out of the L and C Ditch to use on another property because he couldn't get the water through the Lux Ditch. There is no divider in the ditch at the present time through which he can get water in the L and C Ditch. He was asked:

"* * * was there or was there not any indication to tell you at any time you examined the land whether or not the land had been irrigated and, if so, how much of the place had been irrigated at any time?

"A. That is pretty hard to tell. The old ditches are all practically gone. Part of it was irrigated, you could see, but to tell you whether it was all irrigated, you couldn't tell.

"Q. Was there any time while you were on the ranch that there was enough water came down for you to irrigate that part of the land that you could tell had been irrigated before?

"A. Oh, yes, many times.

"Q. And did you use the water on all of that?

"A. Well, I used, a lot of times I wanted to use water awfully bad but couldn't get it when there was plenty of water in the ditch. *There was no way to get it out of the ditch.*

"Q. Why couldn't you get it out of the ditch?

"A. That ditch had a terrific amount of fall and you put fourteen or fifteen feet of water in a ditch it's com-

ing downhill, and it's pretty hard to put anything there to get that water out. It's going straight down the country.

"Q. Why didn't it go into your ditch through your divider?

"A. Because the Loshbaugh side of the ditch had been known as the main ditch and that water has run down there for years from all of it to half of it and washed in many places a big canyon almost as high as this ceiling, maybe not quite but as high as those lights. It's washed out and it's pretty hard with the amount of fall to put anything in there to get water out.

\*    \*    \*

"Q. Is there any way it could be done so that you would have the amount you are entitled to going into your ditch?

"A. Oh, sure.

"Q. How could it be done?

"A. By putting in a good, genuine divider and seeing that it stays there." (Italics ours.)

S. L. Loshbaugh testified that he and his wife acquired the Crann property in 1920 and subsequently they had sold 100 acres thereof, retaining all of the water rights to themselves. Subsequent to the decree in the Estes-Crann litigation, he placed a division box in the L and C Ditch with the divider so arranged that about one third of the water in the ditch would be available to the Lux property and two thirds to the Crann property. The water in the Lux Ditch was used at irregular periods on the Lux property subsequent to 1920 and the irrigation thereon was irregular and intermittent, and during the interim between these irregular and intermittent periods all of the water in the L and C Ditch was available for his use on the Crann property. He testified that when Benzel purchased the Lux property he told him that the Lux property, under the 1922 decree in the Estes-Crann litigation, was entitled to only 16/71 of the water in the ditch, but that the division box was so

arranged that the Lux property would receive a third of the water while two thirds thereof would flow to the Crann property. During the ownership of the Lux property by Gillum in about 1932 to 1939 and the Dever ownership between 1939 and 1943 and the Benzel ownership from 1943 to the date of the trial, farming and agricultural uses on the Lux property were irregular, and little if any water was used for irrigation purposes; consequently all of the water in the L and C Ditch was available for use on the Crann property. The division box by which water is measured to the Benzel property was washed out some three or four years before the trial, and had not been replaced. So far as the record discloses there was no serious objection made by Benzel or his predecessors in interest to the arrangement under which defendants had made a division of the water, and there is no evidence in the record that defendants knew of Benzel's claim to one half of the L and C Ditch water until this suit to quiet title.

Mrs. Loshbaugh testified that she and her husband had several talks with Mr. Dever about the division of the L and C Ditch water, and in response to his question as to what interest the Loshbaughs claimed in the L and C Ditch, she advised him that they claimed 55/71 by reason of the 1922 decree. Neither Mr. Dever nor Mr. Benzel denied that Mr. and Mrs. Loshbaugh had told them of the Loshbaughs claim of 55/71 interest in the L and C Ditch under the 1922 decree. Both defendants testified that the reason for leaving the divider in the ditch dividing one third of the flow to the Lux property and two thirds to the Crann property was because very little water was used on the Lux property, and when not being used the defendants had the benefit of the entire flow in the ditch for the irrigation of their property.

In the court's findings of fact and conclusions of law, made and entered September 10, 1954, the following:

"11. The Court further finds that on November 5,

1919, one Frank Estes and others filed Civil Action No. 2071 in this court against the then owners of the L & C Ditch No. 68, predecessors in title to plaintiff and the defendants S. L. Loshbaugh and Ida M. Loshbaugh herein, in which case this Court by decree of February 20, 1922, scaled down the 40 cubic feet of water per second of time awarded to such ditch by the decree of this Court of April 8, 1893, Priority No. 112, to 14.2 cubic feet of water per second of time for the reason that the users thereof had by their own judicial admission contained in answer filed by them in said case, used said water on only 710 acres of land and said reduction was determined at the ratio of 1 cubic foot of water per second of time to 50 acres of land. On June 4, 1923, the Supreme Court of the State of Colorado in the case of Estes et al., vs. Crann, et al., 73 Colo. 438, affirmed the decree of this Court entered in said Civil Action No. 2071.

"12.   The Court further finds that of the total of the aforesaid 710 acres, 550 acres were under irrigation upon the Crann lands and 160 acres were under irrigation upon the Lux lands; * * * Ever since the decree in Civil Action No. 2071 was entered on February 20, 1922, or at least since August 16, 1923, (the date of acknowledgment and recordation of the deed to the Crann place from Hannah Crann to Ida M. Loshbaugh), the water used through the L & C Ditch, which was adjudicated to that ditch as modified by the decree of this Court in Cause No. 2071, has been divided on the basis of two-thirds to the Crann (now Loshbaugh) lands and one-third to the Lux (now Benzel) lands.

"13.   The Court further finds that the defendants S. L. Loshbaugh and Ida M. Loshbaugh have recognized the claims of the plaintiff and his predecessors for one-third of the waters from the L & C Ditch. Plaintiff and his predecessors claimed one-half but it wasn't delivered to or used by them. The defendants S. L. Loshbaugh and Ida M. Loshbaugh have claimed and made open and uninterrupted use of two thirds of all the water through-

out the many years. Hostility has existed between the parties in interest during these years. The rights of the present owners should be so measured."

Judgment in accordance with these findings was entered by the court on September 20, 1954.

According to the abstract, the Benzel property, herein referred to as Lux, was conveyed to Geneva Lux on July 21, 1907, and she retained ownership thereof until May 31, 1932, when she sold the same, together with "an undivided one half interest in and to the L and C Ditch and water right No. 68, Priority No. 112." to Frank M. Gillum, who, on October 5, 1939, transferred the title to the Devers, who, on December 28, 1943, transferred the same to Benzel, the plaintiff herein.

From the court's findings and decree in action No. 2071, filed in the Garfield County district court on March 17, 1922, it was definitely established that only 710 acres of land were irrigated through the L and C Ditch, and the undisputed evidence is, and the trial court in the instant action found, that of the 710 acres 160 acres were the Lux property, now owned by plaintiff, and 550 acres were the property of defendants Loshbaugh. In both the Estes-Crann case and the instant case it was determined that one cubic foot of water per second of time was sufficient for the irrigation of 50 acres, consequently at the time of the decree in Estes v. Crann the court determined that 3.2 cubic feet of water per second of time was sufficient for the irrigation of the Lux property, and 11 cubic feet of water per second of time was required for the irrigation of the Loshbaugh property, and the court in the instant case adopted that formula. There is evidence in the record that Loshbaugh, who constructed the first division box in the L and C Ditch after the decree in Estes v. Crann apportioned the water about one third to the Lux property and two thirds to the Crann property, and the water in the L and C Ditch was divided in approximately that ratio during the time that the Lux property was irri-

gated. However, if plaintiff is entitled to one half of the water in the L and C Ditch as he claims, he must establish his right by adverse possession. Loshbaugh, in setting the division box at about one third and two thirds, did so voluntarily, and his replacement of the division box after the same had washed out with the division being about one third and two thirds, was also done voluntarily. There is no evidence in the record upon which it can be said that the doctrine of estoppel is applicable in this case. There is no evidence that irrigation was carried on on the Lux property continuously from 1907 to 1932 and during the Geneva Lux ownership. From 1932 to 1939, during the Gillum ownership, the irrigation was intermittent and sporadic. The evidence is that because of the condition of the ditch and the headgate and the difficulty in getting the water to the Lux property, no attempt was made to irrigate it except for two years during the Dever ownership; since acquiring the property in 1943, in some of the years since then, and particularly in the last four, no attempt has been made by Benzel to irrigate the property.

■ If we are correct in our analysis of the evidence, there is no evidence to be found in the record supporting Benzel's claim of adverse possession. To support the doctrine of adverse possession, such possession must be actual, adverse, hostile and under claim of right, and it must be open, notorious, exclusive and continuous. *Haymaker v. Windsor Co.*, 81 Colo. 168, 254 Pac. 768.

Plaintiff's adverse possession is not established by the evidence in this case.

As was said in *Rominger v. Squires*, 9 Colo. 327, 12 Pac. 213,

"* * * Water rights in this state, where agriculture is almost exclusively carried on by means of irrigation, are valuable properties. In this case the stream from which the water was taken was small, and a scarcity of water therein for the purpose of irrigation was by no means an improbable contingency. It is not reasonable

to suppose that priority of right to water, where water is scarce, or likely to become so, will be lightly sacrificed or surrendered by its owner. Nor should the owner of such a right be held to have surrendered it or merged it except upon reasonably clear and satisfactory evidence. * * *"

■■ The decision of this court most nearly parallel to the factual situation in the instant case is *Woods v. Sargent, supra.* From that opinion counsel for defendant has quoted at length. Plaintiff's counsel has neither cited nor commented upon this decision in his brief filed here, and it may be that his silence in this respect is attributable entirely to his inability to point out wherein the law there announced is not applicable in the instant case. Bearing in mind that in the instant case the court found that at the time of the decree in *Estes v. Crann, supra,* only 160 acres on the Lux property had been irrigated, we find in Woods-Sargent, supra, that the rights of the owners in the L and C Ditch must be determined not on the basis of their ownership of the ditch but according to the amount of water which they respectively used at the time of the decree. According to the decrees in Estes-Crann and the instant case, it was established that no more than 160 acres had ever been irrigated on the Lux place; as a matter of fact, there is competent evidence in this record to warrant a finding that at no time since the decree in Estes-Crann has anything like that acreage been irrigated on the Lux property. If the Loshbaughs are not entitled, under the Estes-Crann decree, as well as the instant case, to 55/71 of the water in the L and C Ditch, then the inquiry is immediately prompted—by what act of theirs are they deprived of that interest? The doctrine of estoppel has no application for plaintiff expended no money and but little labor on the strength of his ownership in the ditch. He was not misled by Loshbaugh as to their interest in the ditch for neither Dever nor Benzel denied, as defendants testified, that they were advised of the claim of

defendants to ownership of 55/71 of the L and C Ditch water. Furthermore, at such times as irrigation water was used through the Lux Ditch on the basis of about one third to Lux and two thirds to Crann, that division was *voluntarily* made by defendants Loshbaugh. As we have stated, it was incumbent upon plaintiff to establish by competent evidence that his possession of one third of the water in the L and C Ditch was actual; furthermore, "It must be adverse; it must be hostile to the owner and under claim of right, and it must be open, notorious, exclusive and continuous." *Haymaker v. Windsor Co., supra.* We call attention to the fact that there is no competent evidence of adverse possession subsequent to 1922, for any period of time under any statute of limitations which would entitle plaintiff to one half of the water in the L and C Ditch by adverse possession.

Under the applicable law and the evidence appearing in this record, defendants Loshbaugh are entitled to a decree awarding them 55/71 of the irrigation waters decreed to the L and C Ditch by the judgment and decree in Estes-Crann, supra, and plaintiff herein is entitled to the remaining 16/71 of the water decreed to the L and C Ditch.

The judgment is reversed and the cause remanded with directions to the district court to set aside the decree heretofore entered herein, and to modify it in conformity with the views herein expressed, and as so modified to enter it as of September 20, 1954, as a final judgment in this cause.