# No. 18,161.

INEZ B. SAUNDERS, ET AL. *v.* RALPH SPINA, ET AL.

(344 P. [2d] 469)

Decided September 21, 1959.

Messrs. STINEMEYER & STINEMEYER, Mr. WILLIAM S. RUSH, Mr. ROBERT P. RUSH, for plaintiffs in error.

Messrs. BOYLE & WITTY, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THE parties will be referred to by name or as they appeared in the trial court, wherein plaintiffs in error were defendants and defendants in error were plaintiffs.

The action was brought by the Spinas and their tenant Oberle for damages and injunctive relief, basing their claims upon alleged rights as equal co-owners of water carried in an irrigation ditch, in which ditch they own an uncontroverted one-half interest. The Scangas were joined in the action as third party defendants only because they claimed an undivided one-seventh interest in all the priorities hereinafter described. Thus the dispute is really only between Saunders and Alloy on the one hand and the Spinas and Oberle on the other.

Though the Spinas and Oberle were successful in the trial court, Oberle assigns cross error because of the award to him of nominal damages upon his claim for $4,933.00 on account of crop losses claimed as the result of defendants denying to him the use of water during a drought period.

The ditch in question is located in Chaffee County. It was judicially decreed in 1890 and designated the Newby and Bowring Ditch No. 103. This decree also recognized and allocated all or parts of four priorities to the ditch " * * * for the use and benefit of the party or parties lawfully entitled thereto, under and by virtue of appropriation * * *." The priorities involved are 19, 92, 119 and 152. It is the dispute over ownership of priorities 19, 92 and 119, which has resulted in this lawsuit.

It seems to be conceded that priority No. 152 was the one originally brought to the ditch by plaintiffs' predecessors in title. The record shows that those parts of 19, 92 and 119, decreed to the ditch, were formerly owned by defendants' predecessors in title. Priority 19, with the .8 of a cubic foot of water per second of time decreed from it to this ditch, was established November 15, 1867; priority 92, with the .53 of a cubic foot of water per second of time decreed from it to this ditch, was established May 31, 1881. Priority 119 for one cubic foot of water per second of time decreed from it to this ditch was established on November 15, 1882; and priority 152 for 7 cubic feet of water per second of time was established on August 4, 1886.

By virtue of their one-half ditch interest and their predecessors' contribution of priority No. 152 to the ditch, the Spinas claim a one-half interest in all of the water allocated to the ditch. They allege that the 1890 ditch decree granted them such a one-half interest and that this is the division of water that had been followed all through the years until this dispute arose. On the contrary, defendants contend they not only own priorities 19, 92 and 119, but have never abandoned them and have never acquiesced for any statutory period of time in adverse use or claim of same by plaintiffs. They urge that they are entitled to the first priority of water in the ditch by virtue of these prior appropriations. They deny that plaintiffs are the owners of any part of priorities 19, 92 and 119.

As we view the record it becomes important, and was a question of fact for the trial court, based upon all of the evidence before it, to determine which of the parties' predecessors owned priorities 19, 92 and 119 before the 1890 decree. Once this question was properly resolved, then the trial court had to determine whether the rights so acquired had been waived or abandoned by their owners since the 1890 ditch decree. The solution requires something more than a simple factual determination, the

issues being clouded by a multiplicity of parties, ditches, conveyances and decrees.

Suffice it to say that we need not recite in detail the lengthy testimony and many documents introduced at the trial. In substance these show:

1. That the manifest weight of competent evidence is that defendants' claims of title are based upon adequate documentary and supporting testimonial evidence, establishing a record chain of title in themselves for priorities 19, 92 and 119.

2. That the parties, over a period of many years, had, at certain times of each year, equally divided the water in the ditch and that such division was accomplished in a manner not inconsistent with the defendants' claim to such priorities, and does not amount to a waiver or abandonment thereof.

3. That defendants at no time claimed any part of priority No. 152, and did not stand upon, and in fact had waived, their additional claim of title by adverse use and possession.

The general rule regarding conflicting evidence presented in a trial to the court is set forth in *Bishop v. Moore* (1958), 137 Colo. 263, 323 P. (2d) 897, where this court said:

"Where a case is tried to the court, and the evidence is conflicting, the findings of fact are conclusive in the appellate court, unless they are so manifestly against the weight of the evidence as to demonstrate some oversight or mistake on the part of the trial judge."

And in *Colpitts v. Fastenau* (1948), 117 Colo. 594, 192 P. (2d) 524, it is stated:

" * * * on findings of fact by the trial court * * *, reversal may be had only where such findings are due to error of law or failure to support by substantial evidence."

From the evidence in this record and from that part of the trial court's findings of fact and conclusions of law, hereinafter quoted, it is apparent that the court

misconceived the compelling facts determinative of the issues and so misapplied the applicable law. This combination of error requires reversal.

Contained within the lengthy opinion of the trial court we find the following paragraphs which we deem significant:

"The plaintiffs' case is based on the decree of the Newby and Bowring Ditch and water rights, entered in the District Court of Chaffee County, Colorado, on June 19, 1890, and introduced in evidence by the plaintiffs as Plaintiffs' Exhibit "A," and their exhibits, Plaintiffs' Exhibits "H," "I," and "J."

"It is the contention of the defendants that they may go behind said decree, Plaintiffs' Exhibit "A," and show that it was not based on the facts as they existed prior to its entry. With reluctance, and over the objection of the plaintiffs, the Court permitted them to do so.

"In support of this contention defendants introduced several written documents containing testimony taken before a referee appointed by the Court to take evidence in a matter entitled, 'In The Matter Of Priorities Of Water Rights In Water District No. 11, Chaffee County, Colorado.'

"Defendants' principal documents, and the ones on which it seems to the Court that their defense must stand, are Defendants' Exhibit No. 6 and Defendants' Exhibit No. 12.

"Defendants' Exhibit No. 6 is a decree to the Noland Ditch, as follows:

"That said ditch is entitled to Priorities Nos. 19, 92, and 133. It is claimed by E. B. Jones, J. B. French and G. W. Wyatt. It is used for the irrigation of lands. It takes its supply of water from the South Arkansas River * * *." * * *

"Defendants' Exhibit No. 12 is the testimony of James M. Bowring taken at Poncha Springs, Colorado on the 8th day of August, 1887, and is, in part, as follows:

" 'That the Ditch Certificate of the Noland Ditch as

filed in office of the Clerk of the District Court in Chaffee County on the 28th day of May, 1881 (a certified copy of which is this day filed with Jno. F. Gooding Referee) is the basis of his claim.

"'That he appropriated water through said Noland Ditch and first used the water to irrigate his land in May, 1881, and continued to so use it during the years 1881, 1882 and 1883.

"'That in the spring of 1884 he transferred his interest in the Noland Ditch to Henry Newby for an interest in the Newby and Bowring Ditch, the original location certificate of which is filed in the claim of D. H. Bowring before said Referee.

"'That since the spring of 1884 he has continued to use the said Newby and Bowring Ditch for the purpose of irrigating his land during the years 1884, 1885, 1886 and 1887.' "

" * * *

"It nowhere appears from the evidence in the case that J. M. Bowring had any adjudicated water rights through the Noland Ditch or that there was (sic) any rights decreed to said ditch until they were entered by the District Court on June 19, 1890 (see Defendants' Exhibit No. 6).

"The most that can be gathered from said exhibit is that Jas. W. Bowring appropriated water through the Noland Ditch and acquired an interest in that ditch, and transferred his interest in the Noland Ditch to the Newby and Bowring Ditch. Likewise, the Blanchards appropriated water through the Newby or Missouri Park Ditch and transferred that right to the Newby and Bowring Ditch. Both parties had transferred, and were using their water through the Newby and Bowring Ditch at the time their decrees were entered, and it is immaterial which transfer to said ditch was made first.

"It appears from the evidence in this case, and from the exhibits introduced by both plaintiffs and defendants, that the parties to this suit, or their predecessors in

title, appeared before the referee to take testimony long after they and each of them had been using their several water rights through the Newby and Bowring Ditch, and submitted their evidence to said referee, and it was upon that evidence, as recommended to the Court by said referee, that said decree of June 19, 1890 was entered.

"It further appears from the evidence and the Court so finds, that the parties hereto and their predecessors in title since the entry of said decree of June 19, 1890 have used the water decreed to the said parties through the Newby and Bowring Ditch jointly, and for such purpose installed in said ditch a diversion box or flume which diverts and divides the flow of water in said ditch equally, causing one-half of said water to flow into plaintiffs' ditch and one-half to flow into defendants' ditch, and that said arrangement has continued from the entry of said decree of 1890 until interferred with and prevented by the defendants during the irrigation season of 1954.

"The Court further finds that the claim of defendants that they are entitled to the prior use of Priorities Nos. 19, 92, 115 and 152, or any one or more of them by reason of their having used that water adversely to the plaintiffs for a period of more than eighteen years, is not supported by the evidence.

"Wherefore, the Court finds and decrees that the plaintiffs' prayer for a restraining order, temporary and permanent injunction, is sustained by the evidence and should be granted."

From these quotations, it is evident that the trial court was of the opinion that:

1. Plantiffs established some right to these water priorities due to the 1890 ditch priority.

2. It was immaterial that defendants proved prior title and use to priorities 19, 92 and 119 before 1890 because it all went into the ditch along with plaintiffs' priority No. 152. The subsequent manner of use then

created an adverse use in plaintiffs or at least an abandonment by defendants of part of their rights.

3. It made a difference that Bowring's rights may not have been adjudicated prior to the 1890 ditch decree.

4. The arrangement for a joint division box on the ditch was inconsistent with defendants' rights.

5. Defendants claimed by adverse prossession all four of the priorities, whereas the record shows a specific waiver of this defense and it appears that defendants at no time had claimed priority 152 or any interest therein.

In all the particulars mentioned we think the learned trial judge was in error.

We find no evidence in this record to support a right in plaintiffs by adverse possession of the water priorities in question or that defendants had abandoned any of their rights.

It is a fundamental rule of irrigation law in Colorado that a decree entered in a ditch adjudication proceeding cannot and does not determine the ownership of the various water priorities awarded to any given ditch. A ditch decree merely awards the ditch its proper number and adjudicates the amount of water to which it is entitled from water priorities which will use it. The date or dates of its various water priorities as related to other ditches, canals and reservoirs within the water district, is also set forth therein. S.L. 1879-81-83 at pages 145-46; *Loshbaugh v. Benzel* (1955), 133 Colo. 49, 291 P. (2d) 1064, at 1067; *Kountz et al v. Olson et al* (1934), 94 Colo. 186, 29 P. (2d) 627; *Robinson v. The Alfalfa Ditch Co.* (1931), 89 Colo. 567, 5 P. (2d) 1115; *Caldwell v. States* (1931), 89 Colo. 529, 6 P. (2d) 1 at 3; *Woods v. Sargent* (1908), 43 Colo. 268, 95 Pac. 932; and *Evans v. Swan* (1906), 38 Colo. 92, 88 Pac. 149; *Oppenlander v. Left Hand Ditch Co.* (1892), 18 Colo. 142, 31 Pac. 854.

Only recently in *Cresson Consolidated Gold Mining*

*& Milling Co. v. Whitten* (1959), 139 Colo. 273, 338 P. (2d) 278, it was said:

"A decree in a water adjudication is confirmatory of pre-existing rights; the decree does not create or grant any rights; it serves as evidence of rights previously acquired."

In *Nichols v. McIntosh* (1893), 19 Colo. 22, 34 Pac. 278, it was held that the same irrigating ditch may have two or more priorities belonging to the same or different parties; and two or more persons may divert water through the same headgate for the irrigation of their several farms without surrender, joinder, or merger of their respective priorities. *Nichols* also holds that as long as an appropriator continues the use of his rights without an unreasonable period of voluntary cessation, abandonment will not be presumed against him.

Here the burden of proof was upon plaintiffs to show either a better record title than defendants (which, according to this record, plaintiffs did not do) or that defendants abandoned or waived their prior rights to priorities 19, 92, and 119, to which defendants had proved title. This burden of adverse use or abandonment was not sustained by testimony consistent with defendants' actual use of their priorities; i.e., that until about August 1st of many years the water was equally divided and that the headgate provided for its equal division. No abandonment was shown and any use by plantiffs of the water in question was not open, continuous, adverse and exclusive for the statutory period. See *Loshbaugh* supra.

In the case of *Rominger v. Squire* (1886), 9 Colo. 327 at 329, 12 Pac. 213, cited with approval in the *Loshbaugh case* supra, it was stated:

" * * * Water rights in this state, where agriculture is almost exclusively carried on by means of irrigation, are valuable properties. In this case the stream from which the water was taken was small, and a scarcity of water therein for the purpose of irrigation was by no

means an improbable contingency. It is not reasonable to suppose that priority of right to water, where water is scarce, or likely to become so, will be lightly sacrificed or surrendered by its owner. Nor shall the owner of the right be held to have surrendered it (or merged it) except on reasonably clear and satisfactory evidence * * * ."

■ *Rominger* was a case where it was held that contracts determining the percentage of ownership in a ditch did not *a fortiori* determine the percentage of ownership in the water transported in the ditch.

■ Defendants further assert that the trial court erred in admitting incompetent evidence; to wit, the testimony of one of the plaintiffs' attorneys in which he gave his opinion, based upon abstract examinations, as to the record ownership of the priorities in question. Even though such evidence is generally held not to be admissible, (See 20 Am. Jur. 672, §799, §800) if it were to be established that such evidence was incompetent in a contested action tried to the court, this clearly would not constitute reversible error under well established precedents.

In *Vanadium Corporation of America v. Wesco Stores Co.* (1957), 135 Colo. 77, 308 P. (2d) 1011, it was said: " * * * Had the trial been to a jury, these objections might have some merit, but where trial is to the court, it is presumed that all incompetent evidence was disregarded by the trial judge and a judgment will not be reversed because of the admission of such evidence, * * * ." *Cf Thompson v. Blanchard* (1947), 116 Colo. 27, 178 P. (2d) 422; *International Service Union v. Espinosa* (1937), 100 Colo. 299, 67 P. (2d) 497; *Klein Land Co. v. Thompson* (1936), 99 Colo. 422, 63 P. (2d) 450.

In the instant case the trial court's findings of fact expressly state that it did not consider this evidence, hence we conclude that no error was committed, counsel's testimony having been disregarded by the court.

Defendants further urge that the court abused its discretion in refusing to admit in evidence a document

discovered after the trial and presented to the trial court for the first time during re-argument of the cause. In view of our comments above, this point need not be considered as other evidence before the court was adequate to prove defendants' title.

The judgment is reversed and remanded to the trial court with directions to dismiss the plaintiffs' complaint and to quiet defendants' title in and to priorities 19, 92 and 119, subject to the rights of the Scangas to an undivided one-seventh interest therein, each of the parties to bear their own costs.

MESSRS. JUSTICES HALL and DAY did not participate.