Wilson, J.
Plaintiff Olmrcli was the owner of an irrigating ditch known as the Church ditch, taking water from Coal creek, and also of three reservoirs supplied from this ditch. The ditch was *45 constructed and used for the purpose of direct irrigation and also for supplying the reservoirs. It was about three miles in length, and thence had two branches each about eight miles in length, and each leading to a reservoir. ' One reservoir, known as the Upper Lake, was a natural reservoir when appropriated, and is the one whose rights are chiefly concerned in this litigation.
Defendant, the Croke Land and Live Stock Company, as grantee of defendant Thomas B. Croke, was the owner of a reservoir, known as the Kinnear reservoir, supplied also from the waters of Coal creek, through a ditch known as the Kin-near ditch. This ditch was also constructed and used for the purpose of direct irrigation as well as to serve the reservoir. Water stored in all of the reservoirs was claimed to be for the irrigation of agricultural lands.
Defendant Stillwell was at the time of the institution of this suit the water commissioner of the irrigation district in which all of these reservoirs and ditches were situate. Defendant Eggleston was also the owner of a reservoir supplied from the waters of Coal creek.
It was alleged in the complaint that plaintiff’s rights had their inception in 1870 and that the Upper Lake reservoir and his ditch were senior in time of construction and in appropriations of water thereby to the reservoirs and ditches of the defendants against whom relief was sought. It was further charged that from 1870 to 1892 the superior rights of plaintiff had been recognized, but that “beginning in the year 1892 when said Stillwell first assumed said office, said Still-well has allowed water of said Coal creek to be used by said .defendant Croke and said defendant Eggleston for the purpose of filling their said reservoirs before he would turn out the water for the purpose of enabling the plaintiff to fill his said reservoirs; ” that plaintiff had frequently demanded that the water be first turned out to him, but the said water commissioner had at all times refused so to do. It appears that in 1882, there was an adjudication by the district court under the statutes of 1881 of the priorities of water rights of the *46 ditch, of plaintiff and of that owned by defendant, the Croke Land and Live Stock Company, but originally constructed by John S. Kinnear. A decree was rendered giving the former priority No. 7, and the latter priority No. 8. The rights of the reservoirs have never been expressly adjudicated. The prayer of the complaint was as follows :
“ Plaintiff prays for a writ of injunction to the defendant Stillwell commanding him to deliver water to the plaintiff for the purpose of his filling his said reservoir, from the water of said stream when not needed for immediate irrigation, to the exclusion of the rights for reservoir purposes of the defendants Croke and Eggleston, except as to the small reservoir of defendant Eggleston. Second, that upon the final hearing said injunction be made perpetual and that the court enter a decree declaring the right of the plaintiff for reservoir purposes to be superior to the right of the defendant Croke for that purpose and to the right of the defendant Eggleston except as to a small reservoir above mentioned and granting to the plaintiff the right to fill his said reservoirs before the said defendant Croke and the said defendant Eggleston are allowed water for such purposes. Third, such other and further relief as to this honorable court may seem just and meet.”
To this complaint defendants interposed a demurrer upon the grounds that the complaint did not state facts sufficient to constitute a cause of action and that there was a misjoinder of parties defendant. This was overruled, and thereupon defendants filed an answer, and plaintiff replied. When the cause was called for trial, the defendants “ moved objections to the introduction of any testimony .by plaintiff ” 'on the ground that the complaint did not state facts sufficient to constitute a cause of action. This motion was sustained by the court, as was also a motion by defendants thereupon made for judgment in its favor upon the pleadings.
The plaintiff brings the cause into this court and assigns error upon the refusal of the trial court to permit the introduction of testimony hi his behalf, and upon its judgment of dismissal.
*47 In our opinion, the court did not err in either particular.
Whether or not the specific procedure prescribed by statute for the adjudication of priorities of water rights is exclusive, we shall not determine. It is obvious however that the decree which plaintiff seeks to have rendered in this cause would be the same in its force and effect between the parties to the suit, as would a decree under the statutory method of adjudication. Upon reason and principle it would seem, therefore, that what the statute regards and expressly requires as material facts to be alleged and shown in order to sustain a statutory decree, should be none the less essential to uphold a decree in a suit in equity intended to accomplish the same purpose, conceding that this form of action may be maintained. Tested by this standard, we are of opinion that the complaint was fatally defective.
Neither the capacity of the reservoir nor the amount of water appropriated through it and applied to a beneficial use is alleged so that the defendants could take issue upon it, or with such definiteness that a decree might be based upon it. The only averment touching ■ this point is that contained in the statement of claim for ditch and three reservoirs filed by plaintiff in the office of the clerk of the district court, May 27, 1881, and which is incorporated into his complaint. This was that the Upper Lake reservoir “ covers when full, about twenty-five acres; average depth about fifteen feet; can draw off about nine feet in depth from the surface. Intend to increase depth about four feet by dike.” This is entirely too indefinite, especially in view of the fact that there is no reason why a more definite description should not be given, either by the amount of water which would flow into it through the supply ditch measured by cubic feet per second of time, or by a specific statement of its size, or of the amount of land which the water contained in the reservoir would and did irrigate.
Again, the complaint is framed upon the theory that plaintiff had a right prior and superior to that of defendants to fill his Upper Lake reservoir as its capacity existed at- the time *48 this suit was begun, and the prayer for relief is in accordance with such claim. In his statement of claim of water rights for ditch and reservoirs made and filed in 1881, plaintiff says that he intended to increase the depth of the reservoir about four feet by dike, and thereby he would necessarily enlarge the reservoir capacity. In his complaint he alleges that he had “ expended large sums of money in the construction of dikes, dams and other improvements in and about said ditch and reservoir.” Prom this language the presumption is fair and the conclusion is irresistible that he had made such enlargement, but there is no averment whatever as to the time when it was made nor the extent of it. These facts were absolutely necessary to be known by the court before it could determine the disputed rights of the parties and render any decree. They were essential facts and averments upon which the right of the plaintiff to relief depended. The defendants were also, in accordance with familiar rules of pleading, entitled to have these matters alleged and fully set forth, that they might be advised of the facts upon which plaintiff based his claim of priority and its extent. The plaintiff might have had, as he claims, the prior right to the amount of water appropriated to and used from the reservoir when it was in its natural state first utilized by him, but he would not have such priority as to any additional water attempted to be secured by an enlargement of the reservoir made after the rights of defendants had accrued by their appropriation through ditches or reservoirs. If properly alleged, the former might have been conceded by defendants.
Under the constitution and laws of Colorado, the right to the use of water for irrigation is dependent upon its diversion and actual and continuous appropriation to such beneficial use, and then only to such extent as is necessary for the use intended. In a suit to determine the priorities of such right, it is not sufficient for the plaintiff to merely allege in his complaint that he has the priority of right. That is a legal conclusion. He must specifically aver all of the substantive facts which are necessary to constitute such priority. *49 Farmers H. L. C. & R Co. v. Southworth, 13 Colo. 115. This is required even though the action, as is here claimed, is not the statutory one provided for the adjudication and settlement of priorities. The relief asked by this plaintiff could be granted only upon the ground that he had a priority of right over defendants. The settled rules of pleading demand therefore that all of the facts which are requisite to constitute such priority should be set forth in the complaint. A mere difference in the form of' the procedure does not vary the principles involved nor dispense with these rules.
These facts are not alone the prior diversion and appropriation of the water, but the amount of the appropriation must be given. It may not always be possible to describe such amount by cubic feet per second of time, but in such event sufficient data must be given, such as the width, depth, grade, area, etc., of the ditch or reservoir, by which the'amount could be readily ascertained. In case of a reservoir this could easily be done, especially in the present instance, where the carrying capacity of the ditch seems to have been susceptible of accurate measurement. An additional fact, equally essential to be known and stated, is the quantity of land for the irrigation of which the water is used. No right can be secured either by diversion or appropriation to more water than is necessary for the proper irrigation of the land to which it is applied.
Plaintiff contends however that in any event he has by prescription the right prior to defendants to fill his Upper Lake reservoir, and that having sufficiently pleaded that right in his complaint, the court erred in refusing to permit him to offer testimony, and in its judgment of dismissal. This position is vigorously assailed by defendants, whose counsel emphatically deny that the doctrine of prescription, as applied to the right to use water, or in the water, prevails in Colorado. This important question it is unnecessary in the view which we take of the case to decide, and we decline to express any opinion upon it. It is sufficient for us to say, that even conceding plaintiff’s claim that the right may exist and *50 become absolute by prescription, it is not sufficiently pleaded in his complaint. It is not enough to simply assert that by usage for a certain period of years he has acquired and holds the right of prescription. That is simply the statement of a legal conclusion. There are other facts essential to the acquirement and existence of the right by prescription, if it can be so acquired at all, and it is equally as necessary that they should be stated in the complaint, as it is that in a suit to establish the priority of a right to the use of water, the facts constituting such priority must be specifically alleged. Counsel for plaintiff seems himself to recognize the necessity of such pleading by saying, “ The law in the western states where agriculture is carried on by means of irrigation, recognizes a prescriptive right to the use of water after the claimant has been in the open, notorious, continued, uninterrupted and adverse possession of the right for a period of time corresponding to the time fixed by the statutes of limitation as a bar to entry upon land.” The complaint does not set forth the facts which counsel himself says are necessary to constitute the prescriptive right. It is true that he alleges his possession and use from 1872 to 1892 to have been adverse, but he does not set forth any facts showing it to have been adverse. For aught we know from the complaint, there may have been sufficient water in Coal creek during those years to have supplied all of the reservoirs belonging both to plaintiff and defendants. If this were the case, neither party could have initiated or acquired a prescriptive right by having his reservoir first filled. Such action under such circumstances would not have been the assertion of a claim of right adverse to the others. It would not have been an invasion of the rights of the others for which they might have maintained an action, even had their rights been prior and superior to that of the party whose reservoir was first supplied. Anheim v. Semi-Tropic Co., 64 Cal. 191.
It is further urged by plaintiff that since the rendition by the district court in 1882 of the decrees as to the priorities of the Church ditch and the Kinnear ditch, through which *51 water is supplied to tlie reservoirs whose rights are in controversy, the parties owning the ditches and reservoirs have during the subsequent years by permitting without protest the Upper Lake reservoir of plaintiff to be first filled, treated such decrees as a determination also between those parties of the relative rights of these reservoirs, and that plaintiff having during such years acted upon such construction by the expenditure of large sums of money for dikes and other improvements about his reservoir, and the bringing of large tracts of land under cultivation, the defendants are now estopped by these acts of acquiescence from asserting a reservoir right paramount or superior to that of plaintiff; that all of the water commissioners prior to the defendant commissioner had recognized these decrees in the distribution of water for reservoir purposes, and had universally recognized the rights of plaintiff as paramount to those of the defendant reservoir owners; that the action of these officials amounted to a contemporaneous construction of the decrees, and in accordance with that construction they should now be enforced ; that every element necessary to constitute such estoppel is found in the transactions set forth in the complaint, and that it therefore fully, completely and sufficiently states a cause of action. There are many potent reasons which render this position of counsel untenable, but we deem it necessary to refer to one only. As before stated in this opinion, in discussing the claim of plaintiff to priority of right by prescription, the allegations of the complaint nowhere disclose the fact, if such was the case, that during any of the years prior to 1892, there was any scarcity of water in Coal creek. If during this time the supply of water subject to the use of the parties to this suit was ample to fill all of their reservoirs, then it was immaterial whose was first filled. In such event, conceding the truth of the allegations of the complaint as to the acts of the water commissioners and the acquiescence therein by defendants, they would not operate to estop defendants, even admitting the contention of plaintiff that they would at any time have such effect. Until *52 defendants failed to receive a sufficient supply of water in consequence of the first filling of plaintiff’s reservoir, there could have been no obligation upon them to have asserted a superior right. Then for the first time would there have been an invasion of their rights, acquiescence in which might have ripened into an estoppel.
It was further asserted in the complaint that ever since the construction of the several ditches and reservoirs until 1892, Kinnear and his successors in interest admitted and conceded that their rights were junior, and conceded the right of plaintiff to first fill his reservoir. There was no allegation however of any agreement or contract by which this concession was made, nor of any fact from which it might be presumed, unless it be that during these years the reservoir of plaintiff had been first served and witho.ut any objection on the part of defendants. This fact alone, as we have already held, would not be sufficient to create an estoppel, or to establish a right of priority by prescription.
The complaint not having been sufficiently aided by the answer in these respects wherein we consider it to have been fatally defective, we conclude that the judgment of the trial court was not error.
Several other important legal questions are raised and ably discussed in the briefs of counsel on both sides, some of which at least will probably have to be determined by the court of last resort in this jurisdiction before this litigation is finally ended. Ordinarily, in furtherance of the speedy termination of litigation, this court would discuss and determine such questions. In this instance however, the court does not feel that the obligation is imposed on it, for the reason that it would be without final jurisdiction in any suit or proceeding which may be maintained to secure the relief prayed for in this action, or to adjudicate the rights involved. The docket of this court is already overburdened with causes for which it is the court of last resort, and to which court alone they can be brought on appeal or error. The rights of these litigants to a prompt and speedy hearing should not be *53 prejudiced by tbe consideration of causes, like that at bar, when the judgment, whatever it may be, is'subject to review by another judicial tribunal. In such cases, the court will consider only such questions as are absolutely necessary to determine its judgment of affirmance or reversal.
For the reasons given, the judgment will be affirmed.

Affirmed.