RICHARD M. SHANAHAN, Plaintiff and Appellant, *v.* UNIVERSAL TAVERN CORPORATION, a Montana Corporation, Defendant and Respondent.

No. 14053.
Submitted Oct. 13, 1978.
Decided Nov. 6, 1978.
585 P.2d 1314.

Berg, Andel, Andriolo & Morgan, Ben E. Berg, Jr., argued, Bozeman, for plaintiff and appellant.

Joseph Sabol, argued, Bozeman, for defendant and respondent.

MR. JUSTICE DALY delivered the opinion of the Court.

Plaintiff Richard Shanahan, an architect, filed a mechanic's lien against real property for services rendered. He subsequently filed an action in the District Court, Gallatin County, to foreclose the lien. A trial without jury was held before the Honorable W. W. Lessley. The court issued findings of fact and conclusions of law declaring the lien invalid and awarding attorney fees to defendant, Universal Tavern Corporation (Universal). Plaintiff then filed a motion to amend the findings and conclusions which was denied. Plaintiff appeals.

Universal is a corporation which leases a portion of the Baxter Hotel in Bozeman, Montana. As an express condition of the lease, the corporation was required to make certain improvements to a portion of the hotel. In an effort to comply with this condition, the management of Universal met on several occasions and discussed with Shanahan, an architect, their ideas and financial limitations for the improvements. The parties subsequently executed an owner/architect form contract provided by Shanahan which was standard in all respects except for a certain clause inserted by Shanahan. This clause provided that Shanahan was to receive $500 upon completion of a "preliminary study plan" and that, upon approval of this plan, he was to be compensated for further services by a percentage of the estimated construction cost of the improvement.

Shanahan's work was to consist of five stages; the schematic design phase; design development phase; construction documents phase; bidding phase; and construction phase. Although the extent of what plaintiff performed is at issue, it appears he finished the preliminary schematic design phase, projecting a cost of $90,00ʊ. He was informed the estimate was unacceptable. Upon further negotiation, the budget limitation was extended from $50,000 to $60,000. Shanahan then presented a second preliminary projection, showing an anticipated cost of $78,000.

Universal contends and the District Court found that it did not approve this plan, thus terminating Shanahan's services. Shanahan was in fact compensated the $500 for his preliminary study plan work but contends that the $60,000 cost limitation was not contained in the contract, and by the terms of the contract, was not effective if not in writing.

In any event, Shanahan proceeded to complete more work. He billed Universal for this work, based on a percentage formula, in the amount of $4,800, giving credit as per the contract for the $500 already paid. Universal refused to pay the $4,300 balance. The filing and attempted foreclosure of the mechanic's lien ensued.

The dispositive issue before this Court is whether the District Court was correct in concluding that approval by Universal of the preliminary study plan prepared by Shanahan was a condition precedent to Shanahan performing further work and to Universal being obligated to pay for any services based on estimated construction costs, and that this approval was not given by Universal, therefore Shanahan is not entitled to further compensation.

A related issue is whether Universal could use its own informal budget limitations as a basis for approving or rejecting Shanahan's preliminary study plan.

The contractual scheme for payment of compensation to the architect is contained in the following provision of the contract

"II. THE OWNER shall compensate the Architect in accordance with the Terms and Conditions of this Agreement.

"A. FOR BASIC SERVICES, as described in Paragraph 1.1, Basic Compensation shall be computed on the basis of one of the following PERCENTAGES OF CONSTRUCTION COSTS, as defined in Article 3, for portions fo the Project to be awarded under

"Separate Stipulated Sum Construction Contracts Ten *

"percent (10%) *

"The initial phase of a preliminary study plan and presentation to be compensated for in the sum of Five Hundred Dollars ($500.00). Upon approval of the preliminary the $500.00 will be credited the owners account and the above stated percentage the method of compensation."

From this provision, part of which was typed in by Shanahan on a printed form contract, it clearly appears that before any compensation payment is to be made to Shanahan based on construction cost, he is required to secure approval from Universal of the preliminary study plan and presentation. Cf. *Palmquist v. Allardyce Petroleum Corp.* (1974), 164 Mont. 178, 180, 520 P.2d 783, 784.

Whether he did receive such approval is a question of fact for the trial court. After reviewing the transactions between the parties and observing and hearing the testimony at trial, the District Court concluded that no such approval was received by Shanahan or given by Universal. Our function on appeal in reviewing findings of fact is not to substitute our judgment for that of the District Court, but rather to determine whether there is substantial evidence to support the lower court's findings. *Continental Oil Co. v. Board of Labor Appeals* (1978), 178 Mont. 143, 582 P.2d 1236, 1243. We find sufficient evidence to support the District Court's findings and conclusions and therefore affirm the judgment.

As examples of this supporting evidence the Universal official most directly involved with the contract testified that no approval, written or verbal, had been given to Shanahan to proceed from the preliminary study plan to any other phase of the contract. During cross-examination he conceded that the general concept presented by Shanahan had been approved but that the dollar figure for con-

structing the proposed design had not been approved.

Shanahan himself could not name the specific Universal official who gave him approval nor give the date on which such approval had been given.

Perhaps the most telling thing, however, is Shanahan's recounting of the preparation of the documents. From his testimony it appears that he himself was unable to differentiate between the five phases called for in the contract; that, in his words, "all the phases somewhat merge together because it's like a stepping stone or building bridges. So it's, you know, it's difficult to say the end of this and the end of that . . ." Further, he stated that all of the work he had done, with the exception of a single exhibit, should be considered as part of the preliminary study plan completed by the time of the meeting at which Universal disapproved the cost estimate.

Obviously, if Shanahan had received approval of each phase as called for in the contract, he would be able to differentiate as to when each phase was completed. That in his mind the phases merged together indicates there was no specific approval of each phase to define the end of one phase and the beginning of another.

Shanahan asserts that when he was told to try to get the cost of the improvements down to $60,000 he was told to move into the fourth or bidding, phase of the contract. Yet, each phase of the contract called for him to submit a statement of estimated cost. By a fair reading of the contract he could be viewed as being still in the preliminary schematic phase of his services.

The thrust of Shanahan's argument is that Universal should not be allowed to use any budget consideration, no matter how informal, as a criterion in approving or rejecting the preliminary study plan presented by Shanahan unless this budget limitation were agreed to by the parties and put in writing.

Shanahan argues that under section 3.4 of the contract any fixed limit of construction cost must be in writing and signed by the parties to be effective. As we read the contract, and keeping in mind that any uncertainty must be resolved against Shanahan as the person drafting the contract, section 13-720, R.C.M.1947, the

cost limitation required to be in writing related only to the calculation of Shanahan's compensation. In fact, in Article 3 of the contract, where the requirement of having any fixed limit of construction cost in writing appears in section 3.5, section 3.1 states:

"If *the Construction Cost is to be used as the basis for determining the Architect's Compensation for Basic Services,* it shall be the total cost or estimated cost to the Owner of all Work designed or specified by the Architect." (Emphasis added.)

It was this cost limitation which was required to be in writing.

■ This requirement did not preclude Universal from using its own informal budget limitation, whether communicated to Shanahan or not, in determining whether to accept or reject Shanahan's preliminary proposal. In contracting with Shanahan for a preliminary study plan at a flat fee of $500, Universal did not waive its rights to decide that Shanahan's proposal was too expensive and thereafter withdraw from the project. Under the contract Universal could withhold approval because of unsatisfactory design, dissatisfaction with the presentation, disagreement over space usage or materials or any reason whatsoever, including too high costs. This is exactly what the contract contemplated by requiring approval by Universal of the preliminary study plan before Shanahan was to proceed. When approval was withheld, all other phases of the contract were dropped and any consideration cost to fix future compensation became unnecessary.

The judgment of the District Court is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, SHEA and SHEEHY concur.