No. 81-568

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

J. R. LEWIS,

        Plaintiff and Appellant,

   -vs-

G. K. MURPHY, MARGARET K. MURPHY and
LITTLE HORN STATE BANK,

        Defendants and Respondents.

---

Appeal from: District Court of the Fourteenth Judicial District,
In and for the County of Musselshell, The Honorable
Nat Allen, Judge presiding.

Counsel of Record:

    For Appellant:

        Thomas J. Lynaugh; Lynaugh, Fitzgerald and
Skaggs, Billings, Montana

    For Respondents:

        Crowley, Haughey, Hanson, Toole & Dietrich;
George Dalthorp, Billings, Montana
Douglas Y. Freeman, Hardin, Montana

---

        Submitted on Briefs: April 29, 1982

                Decided: August 11, 1982

Filed: AUG 11 1982

_Thomas J. Kearney_
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

This is an appeal from a declaratory judgment entered by the Fourteenth Judicial District Court interpreting a land exchange agreement between the parties.

Respondents are the owners of a ranch located in Musselshell County, Montana. In the spring of 1979, appellant began negotiating with respondents for the purchase of their ranch. Three agreements were subsequently executed by the parties.

Signed on May 25, 1979, an "Offer and Agreement to Purchase" established the total price for the ranch at $600,000.00, of which $15,000.00 was payable as earnest money, $135,000.00 was due on closing, $24,000.00 was due by January 1, 1980, and the $426,000.00 balance was to be amortized over a 25 year period, the first payment thereof due one year from closing.

The second agreement, executed by the parties on June 1, 1979, altered the nature of the parties' transaction from a sales agreement to a tax-free land exchange. By terms of this preliminary agreement, an exchange agreement was to be drafted giving appellant approximately three and one-half years to acquire like-kind property that could be exchanged for respondent's ranch. Appellant was to purchase the property to be exchanged with monies he deposited in an escrow account. The preliminary agreement changed the payment arrangements in the following manner: (1) the balance of $426,000.00 that would remain as of January 15, 1980, would be subject to a two-stage balloon payment, one-half of which was due on or before September 15, 1982, the remainder of which was due by January 15, 1983; and (2) all

-2-

unpaid balances would be subject to an interest rate, commencing at 10.625 percent per annum, that would be adjusted annually to reflect the then-current interest rate on Aetna Insurance Company agricultural loans.

The actual exchange agreement was executed June 22, 1979. The following paragraph sets out appellant's particular payment obligations.

"2. LEWIS DEPOSITS:

"Lewis agrees to deposit with the escrow agent, the amount of Ten Thousand and No/100 ($10,000.00) Dollars on the date of this agreement, One Hundred Forty Thousand and No/100 ($140,000.00) Dollars on or before June 29, 1979, the amount of Fourteen Thousand and No/100 ($14,000.00) Dollars on January 15, 1980 and the balance of Four Hundred Twenty Six Thousand and No/100 ($426,000.00) Dollars computed on a 25 year amortization, with a two stage balloon deposit of one-half of the then remaining principal balance deposited on or before September 15, 1982, and the full remainder deposited on January 15, 1983. Lewis shall have the right to predeposit any amounts without penalty. In addition to all amounts to be deposited by Lewis to the escrow agent, Lewis shall make additional payments of amounts as hereinafter computed deemed to be payment for and a compatible factor for rent of said premises until the various deeds are released to Lewis as hereinafter provided. The rent factor is 10.625 per annum on all undeposited balances. On each annual anniversary date from the date of this Agreement, a new rent factor shall be determined and be in effect for the year following. The rent factor shall be equal to the then current Aetna Insurance Co. interest rate on agricultural loans, but in no event shall said rent exceed 12% or be less than 7%. All monies deposited may be to an interest bearing account and such interest may be used for payment of acquisition expenses of the like kind property. All monies paid to the escrow agent shall be used to acquire like kind of property as called for in this exchange agreement, and in event of a default by Lewis, any equity in the like kind of property so acquired by Lewis and any remaining monies then deposited with the escrow agent will be forfeited and shall be assigned and paid in full to Murphy. The escrow agent shall be authorized to release to Lewis from time to time all or part of the monies escrowed, or any part thereof, to be applied upon the purchase price of like kind property."

The parties now disagree as to what this paragraph requires in terms of the nature and timing of appellant's payments.

Respondents interpret this provision to require two types of payment from appellant. The first, loosely referred to as "deposits" in the agreement, is the equivalent of principal payments on the purchase price of the ranch. According to respondent's understanding, annual deposits are required in addition to the deposits specifically scheduled under the second section of the exchange agreement, and only deposits are to be accumulated in the escrow account toward the purchase of like-kind property. The second kind of payment expected by respondents is a rental payment for appellant's immediate possession of respondent's ranch. Computed by applying the appropriate rent factor to the current undeposited balance of the purchase price, rental payments are made semi-annually and directly disbursed to respondents.

Appellant's interpretation is contrary to respondent's in two major respects. First, appellant reads the agreement to require payment on the principal only in the amounts and at the times specifically set forth in the agreement; he does not believe that a requirement of annual payments on the principal was to be implied from language regarding a 25 year amortization. Appellant also understands the agreement to provide that all of his payments, whether deposits or rentals, are to be deposited with escrow agent and used solely for the acquisition of like-kind property. Additionally, appellant believes that rental payments are due at the same time as the two balloon payments.

Respondents communicated their understanding of the exchange agreement to appellant in a series of letters

during the summer of 1981. The last of these letters, dated July 31, 1981, fully detailed respondent's interpretation of the agreement and appellant's current defaults under the agreement and gave appellant notice of their intent to default him if he did not presently cure the described defaults.

Meanwhile, acting on his understanding of the exchange agreement, appellant revoked the power of attorney he had given the Hardin lawyer who drafted the preliminary and exchange agreements. The Hardin lawyer had previously authorized the escrow agent to release rental payments to respondents. Appellant believed such action violated the terms of the agreement. The July, 1981 rental payment, per appellant's direction, was not released to respondents.

Appellant then initiated a declaratory judgment action seeking interpretation of the contract. Respondents answered and filed a counterclaim requesting damages for retention of rental payments. The court restrained respondents from declaring appellant in default under the agreement pending its declaration of the parties' rights. Appellant specifically asked the District Court to determine: (1) whether the agreement required annual amortized payments to the escrow account; (2) when the rental payments were due; and (3) whether the escrow agent may distribute rental payments to respondents. After a hearing on the merits, the District Court essentially adopted respondents' interpretation of the contract.

The District Court declared that under the agreement annual amortization payments were required on the anniversary of the agreement. Finding that no such payments had been made in 1980 and 1981 the court ordered appellant to deposit $8,301.93 with the escrow agent in order to cure his default.

The court further determined that the contract required bi-annual rental payments on or before January 15th and June 22nd of each year and prompt disbursement of such payments to respondents. Finding that the sum paid toward rent in July, 1981, was improperly withheld from respondents, the escrow agent was ordered to immediately disburse such monies to respondents and appellant was compelled to pay as damages interest that had accrued on such monies from the date of deposit until the date paid.

Appellant appeals from the entirety of the District Court's declaratory judgment. Appellant contends that the court's interpretation is unreasonable, in derogation of the parties' intentions, and the product of misapplied rules of contract construction.

We find no error in the District Court's interpretation of the exchange agreement and affirm.

Appellant argues that because the land exchange agreement was adopted to provide respondents with favorable tax consequences upon the disposition of their ranch, any ambiguity in the contract should be construed against respondents. Appellant's argument is not well taken. This is not a case where one party authored the agreement at issue. Cf. Shanahan v. Universal Tavern Corp. (1978), ____ Mont. ____, 585 P.2d 1314. Here, the parties made a tentative decision to accomplish the land transfer by means of an exchange and then contacted the Hardin attorney to do their bidding. The attorney did not represent one party's interests to the exclusion of the other's. The attorney simply drafted an agreement to reflect the parties' concerted intentions. Section 28-3-206, MCA, does not apply if the ambiguities created are the joint product of both parties. Rumph v. Dale-Edwards, Inc. (1979), ____ Mont. ____, 600 P.2d 163, 36 St.Rep. 1022.

Appellant next submits that it is unreasonable to require annual amortization payments when the amortization language in the contract is inconsistent with the general nature of the agreement. While it is true that particular clauses of a contract must be subordinated to its general intent, section 28-3-307, MCA, a court must also give effect to every part of a contract if reasonably practicable. Section 28-3-202, MCA. The District Court's order gives regard to the common and ordinary meaning of the phrase "a 25 year amortization" without in any way impairing the purpose of the exchange agreement. Appellant's argument here is not persuasive.

Appellant also argues that the specification of bi-annual rental payment dates was unreasonable. The argument is without merit. The lower court made specific findings that rental payments had been made on January 14, 1980, June 13, 1980, February 6, 1981, and July 8, 1981; that principal payments were expressly required under the agreement on January 15, 1980 and January 15, 1983; and that the anniversary date of the agreement was June 22nd of each year. Appellant's own testimony was that, upon advice of his attorney, he had been making bi-annual payments within weeks of these dates and that he always understood that rental payments were due concurrent with principal payments. If the uncertainty regarding rental payment dates was to be removed, it was eminently reasonable for the court to specify particular dates upon which appellant must perform. The specified dates appear to be consonant with the parties' understanding of the agreement as evidenced by their past performance.

Finally, the District Court's disparate treatment of principal and rental payments is reflective of the parties' mutual intentions under the agreement.

Appellant agreed to deposit the sum of $600,000.00 with escrow agent over a period of three and one-half years. "In addition to all amounts to be deposited by [appellant] to the escrow agent" appellant agreed to make payments "for rent of said premises."

Relying heavily upon the fact that the preliminary agreement never mentions the word "rent" but instead refers only to "interest" appellant attempts to convince this Court that rental payments are actually interest and that the exchange agreement specifically provides that interest may be used for the acquisition of like-kind properties, thus foreclosing disbursement of rental payments to respondents. While it is true that the District Court could properly look to the original sales agreement and the preliminary agreement in hopes of clarifying the parties' intention under the exchange agreement, we are not persuaded by appellant's contention that, in not accepting his analysis, the District Court necessarily erred. In addition to noting that within the four corners of the exchange agreement the parties did not clearly require that rental payments be made to the escrow agent, the trial judge cited three factors which supported his findings that rental payments could be released to respondents under terms of the agreement. The District Court's rationale is sound and supported by substantial credible evidence.

The court's judgment allowed respondents' damages based upon the difference in the 5.5% interest which they would have received on the rent payment held at the escrow bank and the 18.5% interest that they had to pay on money borrowed to cover finances in the interval. The damages awarded thereby are approximately $900 and are supported by the evidence.

-8-

We affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices